NOT DESIGNATED FOR PUBLICATION

No. 128,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SALVADOR TAYLOR,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed August 7, 2026. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PICKERING, J.:  Salvador Taylor was convicted of unlawful sexual relations under K.S.A. 21-5512(a)(7). Under the statute, the State had to prove that the victim was either in a designated institution or in the custody of the Secretary of the Kansas Department of Aging and Disability Services (KDADS). At the district court, Taylor unsuccessfully challenged the State's evidence that the victim was in custody. On appeal, he abandons that argument and now argues that the victim was in the care of ResCare, not KDADS, and thus there is insufficient evidence to convict him. We disagree and affirm Taylor's conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2022, Wichita Police Officer Andrea Wickstrum was dispatched to Wesley Woodlawn for a report of rape. The nursing staff reported that the victim, Jane (not her real name), a ResCare resident with cerebral palsy and intellectual disabilities, was pregnant. That same day, Jane also spoke with the officer. She stated that she had been having unprotected sex with Taylor, a ResCare staff member. According to Jane, the sexual relations had occurred every weekend since April 2022. Jane said she consented to the sex. Jane's brother, her conservator and guardian, stated that, although Jane was nearly 40 years old, she functioned at an 8- to 12-year-old level.

Jane gave birth in January 2023. The Sedgwick County Regional Forensic Science Center took DNA samples from both Jane and Taylor and determined Taylor could not be excluded as the biological father. Additionally, a doctor conducted a psychological assessment of Jane, and, in his professional opinion, Jane lacked the capacity to consent.

The State charged Taylor with one count of unlawful sexual relations, a severity level 5 person felony. Taylor moved to dismiss the charge, asserting that the State could not prove Jane was in the custody of KDADS. Taylor argued that Jane's brother, as legal guardian and conservator, had custody of Jane because he had the "duty, responsibility, power, and authority" to make decisions for "[Jane]'s support, maintenance, care, treatment, habilitation, and education." Taylor contended that Jane "was simply a client that lived at a ResCare group home, and ResCare provided assistance when necessary."

The district court held a hearing on Taylor's motion. The State's only witness was Marlon Harbert, the owner and operator of Individual Advocacy, a case management provider. Harbert explained that Jane had a Person-Centered Service Plan. This plan is a "document [showing] what services are going to be provided and how those services are going to be paid for on the Home and Community Based Waiver [HBCS]." Jane was on an

2

HBCS waiver, which outlined the care provided to her. The waiver was "between the State and the [Medicaid provider] and the service provider." Jane had a "residential, day, and case management" waiver. The State agency was KDADS.

Harbert confirmed that Jane was "placed at ResCare pursuant to her Person-Centered Support Plan that was developed in collaboration with KDADS." When asked whether ResCare was under contract with Sedgwick County to provide services for KDADS, Harbert stated, "Yes. It is an affiliation. That is another lengthy process that providers go through. There is an affiliation agreement. Yes, you are contractually responsible for providing those services." Harbert discussed how the service plan contained rules and responsibilities that Jane had to follow or her services could be terminated.

> "[THE STATE]: . . . The defendant, you know, what he is charged with, it only applies if [Jane] was, quote, in the custody of the Secretary for Aging and Disability Services. Can you tell me, and tell the Court more importantly, does KDADS ever talk about people being in their custody?

> "[HARBERT]: They would not technically use the word, custody, very often. But eligibility and being on the waiver would be how they would utilize that the state of Kansas is providing X dollars for your care."

On cross-examination, Taylor asked Harbert if the service plan's goal was for Jane to make decisions about her own life, if appropriate. Harbert said, "Yes." Harbert also stated that if Jane and her guardian decided Jane should leave ResCare, ResCare could not stop that.

After presenting the testimonial evidence, the State argued how the statute "is poor legislative draftsmanship" because custody "is just not a word that KDADS even uses." The State detailed other custody definitions from Black's Law Dictionary and as defined

3

under two statutes, K.S.A. 23-3211 and K.S.A. 38-2202. The State likened Jane to a child at a camp, where the camp's authority is limited to parental authorization, but the camp still has physical possession and makes some decisions.

The State also argued that Jane's brother may have custody of Jane, but KDADS and Jane's brother could both have custody. Taylor argued that custody was based on "decision-making." And ResCare provided care for Jane, but Jane and Jane's brother made decisions for her.

The district court believed the intent in defining custody was "like an inmate being in the custody of the Secretary—of the jail, and a worker at that jail having sexual relations. That is kind of the set up of this statute." The district court clarified the issue further as: "Was [Jane] in custody of the Secretary of Aging and Disability, and was there an employee that was having sexual relations with her at that time? That is the real question." The district court denied Taylor's motion and stated:

> "Her guardian was not present. He was consulted as it relates to some of her needs, but was not present. She was being taken care of by ResCare. She was, in effect, in the custody of ResCare. She could have—I guess not necessarily checked herself out, but potentially, or the guardian could have checked her out and moved her to a different place. Then she would no longer be in the custody of ResCare. But while she was there, she was in their custody and they were taking care of her and her needs. That being said, I believe as a matter of law she was in the custody of the Secretary of Aging and Disability Services. As such, this motion to dismiss is denied."

After the district court denied the motion to dismiss, Taylor and the State proceeded to a bench trial based on stipulated facts. The agreed stipulated facts included:

4

Taylor's physical relationship with Jane:

"1)      Between the dates of April 1, 2022, and May 31, 2022, the defendant and [Jane] engaged in consensual sexual intercourse, as defined in K.S.A. 21-5501(a), in Sedgwick County, Kansas;

"2)      [Jane] and the defendant were not and have never been married;

"3)      As a result of this intercourse, [Jane] became pregnant, and the defendant is the father of that child;

"4)      At the time of that intercourse, both the defendant and [Jane] were over eighteen years of age."

ResCare Community:

"5)      At the time of the intercourse, the defendant worked for ResCare Community Living (ResCare);

"6)      ResCare is a company that provides housing and disability services to individuals with intellectual and developmental disabilities;

"7)      At the time of the intercourse, the Kansas Department for Aging and Disability Services (KDADS) contracted with the Sedgwick County Developmental Disability Organization (SCDDO) to coordinate services and support for individuals with intellectual and developmental disabilities;

"8)      At the time of the intercourse, SCDDO, pursuant to its contract with KDADS, contracted with ResCare to coordinate services and support for individuals with intellectual and developmental disabilities . . . ."

Jane's care:

"9)      At the time of the intercourse, [Jane] was diagnosed with cerebral palsy and was intellectually delayed. [Jane] required both medical care and assistance for her daily living . . . ;

"10)      At the time of the intercourse, [Jane] lived at a ResCare facility in Sedgwick County, Kansas;

5

"11)    At the time of the intercourse, the defendant was one of [Jane]'s caregivers due to his employment with ResCare:

"12)    Regarding the custody of [Jane] at the time of the intercourse, the following is true:

      a.  KDADS does not refer to any person as being in their 'custody';

      b.  [Jane]'s placement at ResCare was pursuant to her June 14, 2021, Notice of Action . . . and her May 11, 2022, Notice of Action . . . as well as her Person-Centered Service Plan (PCSP) . . . ;

      c.  ResCare was responsible for the daily care, medication, housing, and emergency medical services of [Jane]. That care was provided pursuant to [Jane]'s PCSP . . . , and those services were paid for by the State of Kansas based on [Jane]'s eligibility for services as determined by KDADS in the June 14, 2021, Notice of Action . . . and the May 11, 2022, Notice of Action . . . ;

      d.  [Jane]'s legal guardian was her half-brother . . . . [Jane's brother] and [Jane] would have to be consulted regarding any significant changes to [Jane]'s care (such as a change in residence, regular medication, or other services). [Jane's brother] lived in Vancouver, Washington, and he was a signatory to the PCSP . . . entrusting [Jane] to ResCare."

The district court found Taylor guilty and imposed a 34-month prison sentence.

Taylor now appeals.

## ANALYSIS

Taylor alleges that the evidence was insufficient to convict him because the district court erred when it found that, as a matter of law, Jane was in the custody of the secretary of KDADS. Taylor argues Jane "was solely in the custody of ResCare—which, as a private company, was not part of the KDADS. [Jane] was thus not 'in the custody of the secretary for aging and disability services.'" See K.S.A. 21-5512(a)(7).

6

In its response, the State recognized that Taylor had conceded that Jane was in ResCare's custody. And because "ResCare was responsible for providing [Jane's] housing and daily living needs" through its contract with KDADS, Jane was in the custody of KDADS through "allocat[ion of] its day-to-day responsibility" of Jane to ResCare. The State asserts that, because all custody definitions include "responsib[ility] for, and/or have power or influence over the individual in custody," Jane was in the custody of KDADS.

The State also notes that K.S.A. 21-5512(a)'s purpose is "to prevent an individual from taking advantage of a person who cannot truly consent to sexual contact due to a power imbalance between the individuals." That power imbalance existed here.

*Standard of Review*

When a trial proceeds on stipulated facts, appellate courts view the facts in the light most favorable to the State when conducting de novo review for sufficiency of the evidence. To the extent statutory interpretation is required, that review is also de novo.

> "'The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity.'" *State v. Scheuerman*, 314 Kan. 583, 587, 502 P.3d 502 (2022).

*Jane was in the custody of the Secretary of KDADS.*

K.S.A. 21-5512(a)(7) states, in relevant part:

"(a) Unlawful sexual relations is engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy with a person who is not married to the offender if:

. . . .

(7) the offender is an employee of the Kansas department for aging and disability services . . . or the employee of a contractor who is under contract to provide services in an aging and disability . . . institution or to the Kansas department for aging and disability services . . . and the person with whom the offender is engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy is a person 16 years of age or older who is a patient in such institution or in the custody of the secretary for aging and disability services . . . ."

The State and Taylor stipulated to all of K.S.A. 21-5512(a)(7)'s elements except for whether Jane is a "person 16 years of age or older who is a patient in such institution or in the custody of the secretary for aging and disability services . . . ." Thus, the only question is whether Jane meets this definition. If she does, then Taylor's conviction must be affirmed. If Jane does not meet this definition, then his conviction must be vacated.

K.S.A. 21-5512(d)(8) defines "'institution'" as "the same as in K.S.A. 76-12a01." Under K.S.A. 76-12a01(b): "'Institution' means the following institutions: Osawatomie state hospital, Rainbow mental health facility, Larned state hospital, Parsons state hospital and training center, and Kansas neurological institute." Because ResCare is not an institution listed in K.S.A. 76-12a01(b), Jane was not a "patient in such institution" within the meaning of K.S.A. 21-5512(a)(7). Thus, K.S.A. 21-5512(a)(7) only applies here if Jane is in the custody of KDADS.

8

Taylor fails to properly brief this issue. Taylor conceded at the district court and on appeal that he was an employee of ResCare, which was a contractor for KDADS. At the district court, Taylor argued that neither ResCare nor KDADS had custody because Jane's brother had custody. On appeal, Taylor has abandoned this argument and has conceded that Jane was a person in the custody of ResCare. But Taylor fails to explain  why Jane being in the custody of ResCare equates to Jane not being within the custody of KDADS. He simply asserts that ResCare and KDADS are different entities. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issue not briefed deemed waived or abandoned).

Even if Taylor had presented arguments in support of his insufficiency argument, the argument fails because KDADS had a special relationship with ResCare. A special relationship "may form the basis for such a government-entity duty." *Williams v. C-U-Out Bail Bonds, LLC*, 310 Kan. 775, 789, 450 P.3d 330 (2019). A special relationship includes relationships "between parent and child, master and servant, the possessor of land and licensees, persons in charge of one with dangerous propensities and third parties, and persons with custody of another and third parties." 310 Kan. at 789. "The common law recognizes that the responsibility for some duties is so important to the community that an employer may not be permitted to transfer it to another." *Trout v. Koss Constr. Co.*, 240 Kan. 86, 93, 727 P.2d 450 (1986).

Here, the district court found that the employment relationship created a special relationship:

> "[I]t has been argued that if [Taylor] had quit his job and had a relationship thereafter, or was never employed with this and had a sexual relation with [Jane], . . . then this statute would not apply. But it does at this point in time as he is an employee of a contractor . . . ."

Because of the special relationship between ResCare and KDADS to provide care of Jane, KDADS had a duty to control the conduct of ResCare to protect third parties such as Jane.

See *Williams*, 310 Kan. at 789. Jane was on a waiver that allowed KDADS to provide funding to support her "residential, day, and case management." And the parties stipulated that "ResCare was responsible for the daily care, medication, housing, and emergency medical services of [Jane]" and KDADS "contracted with ResCare to coordinate services and support for individuals with intellectual and developmental disabilities."

KDADS contracted with ResCare to provide support and care for Jane. Because KDADS retained a nondelegable duty to Jane through its contract with ResCare, we find Jane was in the custody of KDADS. In viewing the evidence in the light most favorable to the State, sufficient evidence supported the district court's finding that Jane was in the custody of KDADS based on the employment and contractual relationship between KDADS and ResCare. See *Scheuerman*, 314 Kan. at 587.

Affirmed.